G. Ledesma & Co., Demandantes y Apelantes, *v.* Central Cambalache, Inc., Demandada y Apelada.

Apelación procedente de la Corte de Distrito de Arecibo en un caso sobre rescisión de contrato e indemnización de daños y perjuicios.

No. 1070.—Resuelto en julio 11, 1914.

Contrato de Venta de Azúcares—Contratos Personales—Transmisión de los Bienes del Comprador de los Azúcares a Posteriores Adquirentes.— Celebrado y hecho constar en documento privado un contrato de venta de azúcares por un determinado número de años, entre el dueño de una central y un comerciante, si el dueño de la central la vende a otra persona sin especificarse en el contrato que el comprador asume las obligaciones del vendedor en cuanto al contrato de venta de azúcares, el comprador no está obligado al cumplimiento del referido contrato de venta de azúcares.

Id.—Actos Realizados por un Tercero.—Para que el acto realizado por A pueda obligar a B, es necesario que se demuestre que A actuó debida y legalmente en nombre de B.

Acción de Daños y Perjuicios—Relación Contractual Entre Demandante y Demandado.—Cuando en una acción titulada de rescisión de contrato e indemnización de daños y perjuicios, no se demuestra la existencia de relación contractual alguna entre demandante y demandado, no cabe reclamar indemnización de daños y perjuicios por falta de cumplimiento de contrato.

Errores sin Importancia—Admisión y Exclusión de Pruebas.—Errores come-
tidos por el tribunal sentenciador en la admisión y exclusión de pruebas que
no perjudican los derechos substanciales de las partes, no producen la revo-
cación de la sentencia apelada.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. Cay. Coll Cuchí y San-
tiago B. Palmer.*

Abogado de la apelada: *Sr. Antonio Sarmiento.*

El Juez Asociado Sr. del Toro, emitió la opinión del tri-
bunal.

El presente es un pleito sobre rescisión de contrato y daños
y perjuicios, fallado por la Corte de Distrito de Arecibo en
contra de la parte demandante.

En la demanda se alega, en resumen, 1°., que la deman-
dante es una sociedad mercantil colectiva y la demandada una
corporación, ambas organizadas bajo las leyes de Puerto Rico
y residentes en Arecibo; 2°., que la sociedad agrícola West-
phaling y Cía, domiciliada en Arecibo y dueña de "Central
Oriente," celebró un contrato con la demandante que se hizo
constar en los siguientes términos: "Arecibo, P. R., julio 10
de 1909.  Señores G. Ledesma y Co., Arecibo.  Muy Sres.
y amigos nuestros: De conformidad con lo hablado con su
Don Manuel y nuestro Don Carlos, quedan Uds. nombrados
agentes para la venta de nuestros azúcares, las de nuestros
sucesores o cesionarios durante cinco años y con opción a
cinco más a nuestro favor, pagando Uds. el precio máximo
dentro del mercado puesto abordo en Arecibo, descontando
nueve centavos por quintal por gastos de embarque y alma-
cenaje y el uno por ciento de comisión.  En caso de obtener
nosotros mejor oferta de un tercero y no conviniendo a Uds.
mejorar su límite, quedamos en libertad de vender nuestro
azúcar a otro comprador, abonando a Uds. el uno por ciento
de comisión sobre el precio primer costo, sin los nueve cen-
tavos de embarque y almacenaje.  De Uds. Atto. amigo y

S. S. (Firmado) Westphaling Co.''; 3, que con posteriori-
dad a la fecha de dicho contrato, la sociedad agrícola West-
phaling y Co. se disolvió, constituyéndose una corporación
denominada "Central Oriente" que se hizo cargo de su activo
y pasivo así como de todos sus derechos y obligaciones, y que,
además, "la nueva corporación se hizo cargo y asumió todas
las obligaciones del contrato sobre ventas y embarques de
azúcares efectuado por Westphaling Co. con G. Ledesma
& Cía. a que se ha venido refiriendo esta demanda, cuyo con-
trato fué debidamente cumplido por dicha 'Central Oriente'
durante la zafra que principió en enero y terminó en junio de
1910''; "4, que con posterioridad a junio de mil novecientos
diez la nueva corporación 'Central Oriente' vendió todas sus
fábricas, terrenos y plantaciones a la demandada 'Central
Cambalache, Inc.,' haciéndose ésta cargo de todos los con-
tratos y obligaciones de aquélla; y en cumplimiento del con-
trato originado entre Westphaling Co. y la mercantil deman-
dante, que ésta alega fué transferido a 'Central Oriente,'
y más tarde a la corporación demandada, dicha corporación
demandada 'Central Cambalche, Inc.' entregó durante la za-
fra que principió en enero y terminó en junio del año mil nove-
cientos once todos los azúcares producidos por la manufactura
de las cañas de azúcar que pudieron haber sido elaboradas en
'Central Oriente Inc.,' para ser vendidas y embarcadas por
la mercantil demandante por las cláusulas y condiciones del
referido contrato;'' 5, que la demandante se preparó para
la venta y embarque de los azúcares que debía producir la
demandada en 1912 y entregarle de acuerdo con el referido
contrato, contrayendo serios compromisos, y que la deman-
dada, sin causa ni motivo alguno, se negó a entregar a de-
mandante los azúcares; 6, que la conducta de la demandada
ocasionó a la demandante pérdidas por valor de cincuenta y
cuatro mil dólares. La demanda terminó con la súpl que
se condene a la demandada, 1º., a la rescisión del contrato de
embarque y venta de azúcares de 10 de julio de 1909; 2º., a

indemnizar a la demandante la suma de $54,000 por los daños
y perjuicios que le ha ocasionado con el no cumplimiento del
dicho contrato, y 3°, a pagar las costas, gastos y honorarios
de abogado.

La contestación a la demanda, copiada a letra, en lo per-
tinente, es como sigue:

"1. Niega, por falta de información, los hechos expuestos en la
alegación segunda de la demanda en el párrafo que comienza: 'Y
alega además la sociedad demandante, hasta su final. La demandada
alega además que no irá jurada esta negativa en lo referente a la
autenticidad del documento que se copia en la demanda porque no
aparece suscrito por ella. 2. Niega asimismo, por falta de infor-
mación, los hechos alegados en el número tercero de la demanda.
3. Niega, de una manera absoluta, que la Central Oriente vendiese
todos sus terrenos y plantaciones a la demandada y que ésta se hiciese
cargo de todos los contratos y obligaciones de aquélla y niega, en igual
forma, que en cumplimiento del contrato que la demanda alega que
fué originado entre Westphaling Co. y la demandante, la demandada
entregara a ésta durante la zafra de mil novecientos once todos los
azúcares de las cañas que pudieron haber sido elaborados en la
'Central Oriente Inc.' para ser vendidas y embarcadas por dicha
demandante por las cláusulas y condiciones del referido contrato.
4. Niega, por falta de información, los preparativos y gastos para la
zafra del mil novecientos doce a que se refiere la alegación quinta de
la demanda, y niega además, de una manera absoluta, que la deman-
dada se haya negado a entregar a la demandante los azúcares de la
zafra de mil novecientos doce que le correspondieran por virtud del
contrato a que se refiere la demanda. Dicho contrato, si existió, como
antes se dice, nunca fué aceptado ni, mucho menos, cumplido por la
demandada, ni nunca ni por nadie le fué pedido ni exigido su cum-
plimiento. 5. Niega de una manera absoluta los hechos de la alegación
sexta de la demanda y suplica a la corte que, en su día, pronuncie en
este caso sentencia contra la demandante declarando sin lugar la
demanda con las costas y gastos necesarios y honorarios razonables
del abogado de la demandada a cargo de la dicha demandante."

El 16 de junio de 1913 ambas partes comparecieron por
medio de su abogados ante la corte de distrito, ofrecieron y
practicaron sus pruebas e informaron oralmente. El 1°. de

octubre de 1913, la corte, después de considerar amplia y cuidadosamente las alegaciones y las pruebas, dictó sentencia declarando sin lugar la demanda, sin especial condenación de costas. Y contra esa sentencia interpuso la parte demandante el presente recurso de apelación.

A nuestro juicio, aceptando que Westphaling y Co. contrajeron para con la demandante la obligación que se expresa en la carta transcrita en el hecho segundo de la demanda, la cuestión fundamental a resolver en este caso consiste en decidir sencillamente si tal obligación pasó o no a la demandada "Central Cambalache, Inc."

Negadas las alegaciones de la demanda referentes a las obligaciones contraídas por la "Central Oriente" y la "Central Cambalache, Inc.," con respecto al contrato de venta y embarque de azúcares celebrado por Westphaling y Co. con la demandante, ésta quedó obligada a probarlas en el acto de la vista, y a tal efecto presentó prueba consistente en documentos y testigos.

Las escrituras por virtud de las cuales Westphaling y Co. vendieron sus fincas rústicas y cedieron sus derechos a "Central Oriente," y "Central Oriente" vendió y cedió a "Central Cambalache, Inc." todos sus bienes, derechos y acciones, se copian íntegras en la transcripción de los autos elevada a esta Corte Suprema. Las hemos examinado cuidadosamente y convenimos con el juez sentenciador en que en ninguna parte de ellas se hace referencia al contrato de venta y embarque de azúcares a que se refiere este pleito. ¿Cómo, pues, hacer responsable a la demandada del cumplimiento de dicho contrato? El hecho de que fuera celebrado por el antiguo dueño de los bienes que hoy están en poder de la demandada, no tiene importancia alguna ya que se trata de un contrato puramente personal al cual no quedaron afectados los bienes trasmitidos.

La parte demandante presenta como un argumento poderoso en apoyo de su contención, el documento que a conti-

nuación transcribimos, examinado a la luz de las declara-
ciones de sus testigos.   He aquí el documento:

"LIQUIDACIÓN DEL AZÚCAR DE LA CENTRAL CAMBALACHE, ZAFRA 1911.

Total fabricado............................... 146,144 sacos.
Menos, ventas directas de la Central...........     52    "
                                                 146,092 sacos.
Menos 15,000 sacos que ceden Roses a Ledesma
  en compensación del Oriente ................  15,000   "      131,092 sacos.

          75% Roses              98,319 sacos.
          25% Ledesma           32,773   "                      131,092    "

*Compras:*
Roses          100,092 sacos       100,092 sacos  de más   1,773   "
Ledesma         46,000   "  —15,000  31,000    "   de menos  1,773   "
               146,092   "         131,092 sacos.

*Embarques:*      *Roses*          *Ledesma*              *Total*
Por vapor         69,200            35,000               104,200 sacos.
Por F. C.         20,000            11,000                31,000   "
Consumo           10,892            ......                10,892   "
                 100,092 sacos     46,000 sacos          146,092 sacos.
*Exportado:*
Por vapor        104,200 sacos
Por F. C.         31,000   "                 135,200 sacos.

Proporción F. C.    22.92%
     89,200 sacos        Roses      20,450 sacos    de menos    450 sacos.
     46,000   "          Ledesma    10,550 sacos      más       450 sacos.
*Liquidación final:*
   Abonan Roses a Ledesma:
     4¢ beneficio quintal      1,773 sacos exceso total 4,433 quintales.. $177.32
     1¢ comisión sobre base $4 quintal 177.32................ ........  177.32
     4¢ beneficio quintal      50 sacos – 1,125 quintales..............   45.00
                                                                        $399.64
Arecibo, P. R., 22 de septiembre, 1911.   Hay un sello.   Sucesores de Roses
   y Cía.   Arecibo, P. R."

Las declaraciones de los testigos Ledesma, gestor de la
demandante, y Astor, apoderado general de la misma, en
relación con el documento transcrito, tienden a demostrar
que "Central Cambalache, Inc." de hecho cumplió en el año
de 1911 el contrato celebrado por Westphaling y Co.; con
la mercantil demandante.   Sin embargo, convenimos tam-
bién con el juez sentenciador en que a esta prueba no puede

darse el alcance que le atribuye la parte demandante. Si bien es cierto que en la liquidación transcrita se consignaron las palabras "menos 15,000 s/ que ceden Roses a Ledesma en compensación del Oriente," tal liquidación no aparece autorizada por Central Cambalache, Inc., sino por Sucesores de Roses y Cía., que no se ha demostrado de modo concluyente que ostentaran la representación legal de la "Central Cambalache."

Habiendo llegado a la conclusión de que no se ha probado la existencia de la relación contractual alegada en la demanda entre la demandante y la demandada, huelga discutir toda la materia referente a daños y perjuicios. Si no existe contrato, no cabe reclamar indemnización por falta de su cumplimiento.

Forma parte también de la transcripción de los autos, un pliego de excepciones en el que aparecen debidamente consignadas dos que tomó la parte demandante durante la celebración del juicio. Una se refiere al supuesto error cometido por la corte al no permitir a la demandante probar los perjuicios correspondientes al año de 1914 y otra al permitir a la parte demandada la presentación de ciertos documentos que tendían a probar que siendo precisamente el Sr. Ledesma, gestor de la demandante, el presidente de la junta directiva de la "Central Cambalache," se tomó el acuerdo de vender toda la zafra de 1912 a Georgetti, Cintrón, Aboy y Cía. Aun cuando se hubieran cometido los errores alegados, ninguna influencia tendrían en la decisión de este recurso. En cuanto al primero, porque ya hemos visto que no existe base para entrar en la consideración de si se ocasionaron o no daños y perjuicios a la demandante, y en cuanto al segundo, porque la prueba presentada y admitida no es necesaria para llegar a la conclusión de que no se ha demostrado la existencia del contrato alegado en la demanda entre la demandante y la demandada. La decisión de este caso está sostenida por las

alegaciones de ambas partes y por la prueba de la parte demandante.

Debe confirmarse la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf y Aldrey.

El Juez Asociado Sr. Hutchison no formó parte del tribunal en la vista de este caso.